IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LASHAWN SPRUELL,<br><br>    Plaintiff,<br><br>  v.<br><br>KIMBERLY BARKLEY,<br><br>    Defendant, | Civil Action No. 17-809<br><br>**JURY TRIAL DEMANDED** |

## CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

AND NOW, comes Defendant Kimberly Barkley, by her counsel, Timothy Mazzocca, Deputy Attorney General and the Pennsylvania Office of Attorney General, and files the following Concise Statement of Undisputed Material Facts in accordance with Local Rule 56.1.

### Timeline of Facts Related to Plaintiff's Incarceration

1. On November 5, 1998, Plaintiff, LaShawn (aka Shawn) Spruell, pled guilty to two state law counts of robbery and was sentenced to concurrent periods of incarceration of 4 to 12 years and 5 to 12 years with maximum dates of March 27, 2010 and September 2, 2010. (Ex. 1)

2. Plaintiff was thereafter committed to serve his incarceration in the custody of the Pennsylvania Department of Corrections. (Ex. 2)

3. The Pennsylvania Board of Probation and Parole (Board) granted Plaintiff parole by decision of May 16, 2006. (Ex. 3)

4. Plaintiff was released from prison on June 26, 2006. (Ex. 4)

5. Plaintiff was arrested by the Philadelphia Police Department on October 16, 2008 after he threatened to kill his girlfriend in front of her child, then struggled with police who were trying to get the firearm off of him. (Ex. 4, Ex. 5, Ex. 9 p. 12-13)

1

6. Plaintiff was charged with various crimes related to firearm possession and aggravated assault in state court. (Ex. 6)

7. Accordingly, on December 4, 2008, the Board made a decision to detain Plaintiff in the Philadelphia County Prison pending disposition of the criminal charges. (Ex. 7)

8. On April 24, 2009, a Criminal Complaint was filed in federal court (E.D. Pa.) against Plaintiff relating to the October 16, 2008 arrest. (Ex. 8)

9. The state charges were subsequently nolle prossed. (Ex. 6)

10. Following a guilty plea to a charge of felon in possession of a firearm, on October 26, 2011, Plaintiff was sentenced by Judge Tucker of the Eastern District of Pennsylvania to a federal sentence of 84 months with credit for 36 months time served. (Ex. 9 p. 18)

11. There is no order, indication, suggestion, or hint in either the transcript of the sentencing hearing or in the criminal judgment that Plaintiff would be returned to state prison or to the Board to serve his state sentence before continuing to serve his federal sentence as imposed by Judge Tucker.[1]  (Ex. 9, Ex. 10)

12. On November 16, 2011, the Board recommended that Plaintiff's parole be revoked and that he be recommitted as a convicted parole violator. (Ex. 11)

13. The Board issued a warrant for arrest of paroled prisoner on December 7, 2011 due to Plaintiff's federal conviction. (Ex. 12)

14. Plaintiff remained in federal custody pursuant to Judge Tucker's sentence until July 20, 2015. (Ex. 9, Ex. 10, Ex. 11, Ex. 13)

---

[1] Plaintiff incorrectly stated in a written discovery response in this case that Judge Tucker ordered Plaintiff to be returned to state custody after sentencing. (Ex. 32 #6) As Ex. 9 and Ex. 10 unequivocally show, however, Judge Tucker did not so order.

15.     Plaintiff was released from federal custody upon completion of his federal sentence on July 20, 2015.  (Ex. 13)

16.     The Federal Bureau of Prisons released Plaintiff to the Board pursuant to the Board's detainer.  (Ex. 13)

17.     Accordingly, the Board issued an Administrative Action on July 27, 2015 returning Plaintiff to state custody as a convicted parole violator and scheduling a revocation hearing.  (Ex. 14, Ex. 15)

18.     Revocation hearings are scheduled within 120 days of the parole violator's return to the state correctional institution.  (Ex. 29 p. 8)

19.     Plaintiff arrived at SCI-Greene on August 2, 2015.  (Ex. 2)

20.     In a meeting with Parole Supervisor Matthew Darr after his arrival at SCI-Greene, Plaintiff was very talkative, but Mr. Darr has no recollection of Plaintiff having ever alleged that he was being held at SCI-Greene illegally or past his maximum date.  (Ex. 29 p. 12-13, Ex. 34 #10)

21.     Plaintiff's Revocation Hearing was held on October 28, 2015 before Hearing Examiner Timothy Douglass and Board Member Craig McKay.  Parole Supervisor Matt Darr and Plaintiff's attorney Patrick Fitch were also present and participated.  (Ex. 16, Ex. 16a)

22.     At the Revocation Hearing, Plaintiff, represented by counsel, never argued that he was being held illegally at SCI-Greene.  (Ex. 16, Ex. 16a, Ex. 28 p. 12-14, Ex. 34 #10)

23.     In a Notice of Board Decision dated November 9, 2015, the Board recommitted Plaintiff to a State Correctional Institution as a convicted parole violator to serve 18 months back time with a new parole violation maximum date of March 9, 2019.  (Ex. 17)

24. Plaintiff's maximum date was calculated to be March 9, 2019 due to 3 years 7 months and 17 days of back time owed. (Ex. 18)

25. Plaintiff filed an appeal of the Board Decision on December 17, 2015 alleging that the time he served for his federal sentence should also have counted towards his state sentence, and therefore alleging that his maximum sentence date had passed. (Ex. 19)

26. In a January 2016 interview with Parole Agent Gary Klimowickz, Plaintiff did allege that he was being held past his maximum date. (Ex. 30 p. 8)

27. Agent Klimowickz advised Plaintiff to file an appeal with the central parole office in Harrisburg if he believed he was being held past his maximum date. (Ex. 30 p. 9, Ex. 35 #10d)

28. Thereafter, Plaintiff wrote a letter to the Board reminding it of his pending appeal. (Ex. 20)

29. The Board responded on March 2, 2016, explaining that his file was at SCI-Greene due to his upcoming Board hearing and was unavailable to the Office of Chief Counsel, which would review his file after the Board hearing. (Ex. 21)

30. Plaintiff responded by letter of March 10, 2016 indicating that he did not understand why action could not be taken sooner. (Ex. 22)

31. By Notice of Board Decision of April 13, 2016, Plaintiff was denied parole. (Ex. 23)

32. On May 6, 2016, the Board began reviewing Plaintiff's sentence data sheet. (Ex. 24)

33. Plaintiff's maximum date was subsequently recalculated to April 3, 2014. (Ex. 25)

34. On June 17, 2016, Parole Manager Rachel MacNamara sent an email to Parole Supervisor Matt Darr at SCI-Greene informing him of the recalculation and instructing him to process Plaintiff for release. (Ex. 26)

35. A Notice of Board Decision the same day formally changed Plaintiff's maximum date to April 3, 2014. (Ex. 27)

36. The Notice of Board Decision was released for printing on June 23, 2016. (Ex. 34 #12)

37. The same day, June 23, 2016, Plaintiff was released from SCI-Greene's custody. (Ex. 34 #12)

## Law and Policy Changes – the Context for the Above Facts

38. The general and longstanding Pennsylvania law with convicted parole violators is that the two sentences (original sentence for which there was a parole violation and the new sentence) must be served consecutively; this is based on Gaito v. PA Board of Probation and Parole, 412 A.2d 568 (Pa. 1980). (Ex. 18 p. 20-21)

39. Therefore, credit is not given for one sentence while the prisoner is serving the other sentence. (Ex. 18 p. 20-21)

40. Pennsylvania law (61 Pa.C.S. §6138(a)(5.1)) provides that when the subsequent sentence is a federal sentence, the state sentence is to be completed first, then the federal sentence second. (Ex. 40 ¶3)

41. However, when the parole violator is in the custody of federal authorities, Pennsylvania regulations (37 Pa. Code. §71.5(a) and (e)) permit the Board to defer the revocation hearing and state sentence until after the federal sentence has been completed. (Ex. 40 ¶¶5-6)

42. When a federal judge sentences a prisoner to federal custody to be served immediately, there is nothing the Board can do until the federal sentence is completed, at which point the state sentence may be served second pursuant to 37 Pa. Code §71.5.  (Ex. 40 ¶¶5-6)

43. This is what happened in Plaintiff's case; because he was in federal custody, the Board only regained jurisdiction over Plaintiff after the federal sentence was completed.  (Ex. 40 ¶¶5-6)

44. The Pennsylvania Commonwealth Court changed the law with regard to calculations of sentences for offenders serving both state and federal sentences beginning with its decision in Baasit v. PA Board of Probation and Parole, 90 A.3d 74 (Pa. Cmwlth. 2014), then with Smith v. PA Board of Probation and Parole, 133 A.3d 820 (Pa. Cmwlth. 2016) in February 2016 and Banks v. PA Board of Probation and Parole, 136 A.3d 1102 (Pa. Cmwlth. 2016) in April 2016, which together required that the Board change its longstanding practice based on Pennsylvania law and provide credit toward the state sentence for the same time that the offender served federal pre-sentence confinement in federal custody.  (Ex. 36 p. 8-9)

45. Federal judges often do not take into account any state parole violation when making sentencing decisions, so the Commonwealth Court decision in practice forced the state in such cases to run the state sentence concurrently with the federal sentence.  (Ex. 36 p. 20-21, Ex. 40 ¶¶4-5)

46. The Board disagreed with the Commonwealth Court's decisions, and in response the Board's Office of Chief Counsel decided to make a change in policy to comply with the Commonwealth Court decisions while continuing the appeal process.  (Ex. 36 p. 7-10)

47. In furtherance of that decision by the Office of Chief Counsel, on April 29, 2016, Parole Manager Marci Johnson sent an email to several persons at the Board explaining that from

then on back time credit would be awarded from the Board warrant until the sentence date. (Ex. 38)

48. On June 20, 2016, Ms. Johnson sent a follow-up email with the legal advice of the Office of Chief Counsel in which she passed on the advice from the Board's Office of Chief Counsel that when the convicted parole violator served his federal sentence before completing his original sentence (as Plaintiff did), then the offender would receive sentence credit for the period of time the Board lodged its detainer to the date of sentencing and that the normal prohibitions on double credit and concurrent service of sentences would not apply. (Ex. 36 p. 21, Ex. 37 p. 14-15, Ex. 39)

49. The Board takes approximately 3,000 Board Actions a month and gets about 2,000 appeals of Board Actions per year, and so could not take action on all potential applicable cases immediately. (Ex. 36 p. 11)

50. At the time of Plaintiff's release, Kimberly Barkley was Board Secretary. (Ex. 37 p. 6-7)

51. As Board Secretary, Ms. Barkley's name was on all Board Actions (approximately 3,000 per month), but she did not personally make the decisions, including in Plaintiff's case. (Ex. 37 p. 11, 21)

52. Ms. Barkley is not an attorney. (Ex. 37 p. 6)

53. It is the prisoner's burden to raise the issue of an alleged sentence miscalculation with the Board. (Ex. 36 p. 18)

54. When a prisoner believes that he is being held past his maximum date, his recourse is to file an appeal with the Board, which goes to the Office of Chief Counsel for review and decision. (Ex. 36 p. 14-15)

55. The Board could also become aware of a prisoner's complaint about his sentence through written or telephonic complaints.  (Ex. 36 p. 17)

56. Once a prisoner raises a concern about sentence miscalculation, the Board looks at the case seriously and does its best to follow the law.  (Ex. 36 p. 18)

57. Decisions on inmate appeals of maximum sentence dates are made by the Office of Chief Counsel, which then coordinates with a technician to recalculate the time.  (Ex. 37 p. 12)

58. In the end, the Pennsylvania Supreme Court granted allocatur in Smith and reversed the Baasit/Smith/Banks line of cases.  Smith v. PA Board of Probation and Parole, 171 A.3d 759 (Pa. 2017).  (Ex. 36 p. 22)

59. As a result, the Board reverted to the previous, longstanding law in calculating maximum dates for inmates serving both federal and state sentences.  (Ex. 36 p. 22)

60. If Plaintiff had not appealed to the Board shortly before the Board changed its policy in response to the Commonwealth Court's since-reversed decisions, his appeal would not have been granted and his maximum date would have remained 2019.  (Ex. 36 p. 22)

61. As a result of this policy change based on the since-reversed Commonwealth Court opinions, Plaintiff, who faced a combined maximum of 19 years on his state and federal sentences, only actually served approximately 16 years, thus receiving a benefit of approximately 3 years of freedom when he could have remained incarcerated.  (Ex. 2, Ex. 9)

                Respectfully submitted,

                JOSH SHAPIRO
                Attorney General

                /s/ Timothy Mazzocca
                TIMOTHY MAZZOCCA
                Deputy Attorney General
                Litigation Section

                KELI M. NEARY
                Chief Deputy Attorney General
                Litigation Section

                OFFICE OF ATTORNEY GENERAL
                1251 Waterfront Place
                Mezzanine Level
                Pittsburgh, PA 15222

Date: July 31, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within *Concise Statement of Undisputed Material Facts* was served upon the following individuals via the CM/ECF Filing System.

**David A. Berlin, Esq.**
Weisberg Law
7 South Morton Avenue
Morton, PA 19070

                                            By:  /s/ Timothy Mazzocca
                                            TIMOTHY MAZZOCCA
                                            Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

Date:  July 31, 2018