**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Lashawn Spruell a/k/a | : | |
| Shawn Spruell | : | |
| | : | |
| Plaintiff, | : | NO.:  2:17 -cv-00809 |
| | : | |
| v. | : | |
| | : | |
| Kimberly Barkley | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN
OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    STATEMENT OF FACTS

1.    Plaintiff sent multiple letters to various parties including PBPP on April 27, 2016

indicating that he was being held in prison past when he was supposed to be held in prison.

(Exh. D).

2.    On April 29, 2016, the Pa. Board of Probation and Parole (PBPP) Director of Case

Analysis, Marci Johnson sent an email to multiple people in the PBPP including Defendant about

a new policy.  The subject line of the email was: "Federal and Out of State Cases."  Defendant

was cc'd on the email, which stated:

> **Effective immediately**, please process all federal and out of state cases in the
> following manner.
>
> Give back time credit from the board warrant until the sentence date.  The sentence
> date will be the effective date of return for all cases.  If you feel there is an exception
> to these instructions, please bring cases to Rachel or me. (Exh. A).

3.    Importantly, it is undisputed that this policy meant that Plaintiff should be released from

prison.

4.    Defendant confirmed she received the email.

5.      Defendant testified that she supervised the sender of the email. (Exh. B., Defendant,

Barkley's Dep. at 14:3).

6.      Defendant said she received the same directive from the legal department.  Id. at 14:15.

7.      Defendant said she received a "formal letter" from legal about this new policy. Id.

8.      Defendant confirmed there was a case (Banks) at that time that caused a change in the

way she processed inmates.  Id. at 10:19.

9.      Defendant further testified that Banks did not cause a backlog that would make it difficult

to process Plaintiff.  Id. at 12:17.

10.     On June 17, 2016, Defendant signed a form, which effectively released Plaintiff from

prison.  (Exh. C).

11.     That document was time-stamped and received by the prison, SCI-GREENE on June 23,

2016.  Id.  Plaintiff was then released.

## II.      STANDARD

The purpose of summary judgment is to avoid a pointless trial in cases where it is

unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534

F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038 (1977). When considering a motion for

summary judgment, this Court shall grant such motion "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed.R.Civ.P. 56(c).  When reviewing a motion for summary judgment, this

Court should resolve all reasonable doubts and inferences in favor of the nonmoving

party.  Arnold Pontiac–GMC, Inc. v. General Motors Corp., 700 F.Supp. 838, 840

(W.D.Pa.1988).

The inquiry into whether a "genuine issue" of material fact exists has been defined by the Supreme Court as whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "As to materiality, the substantive law will identify which facts are material." Id.

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir.2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed.R.Civ.P. 56 c. Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 c.

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for

trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F.Supp. 1254, 1258 (D.N.J.1994).  Thus,

to withstand a properly supported motion for summary judgment, the nonmoving party must

identify specific facts and affirmative evidence that contradict those offered by the moving

party.  Andersen, 477 U.S. at 256–57.  "A nonmoving party may not 'rest upon mere

allegations, general denials or ... vague statements ....'"  Trap Rock Indus., Inc. v. Local 825, Int'l

Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir.1992) (quoting Quiroga v. Hasbro,

Inc., 934 F.2d 497, 500 (3d Cir.1991))

      In deciding the merits of a party's motion for summary judgment, the court's role is not to

evaluate the evidence and decide the truth of the matter, but to determine whether there is a

genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). Credibility determinations are the province of the factfinder.  Big Apple

BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992).

## III.    ARGUMENT

### 1.  Defendant had personal involvement and actual knowledge of the wrongful conduct at issue

      Defendant cites a four-part test for instances where something akin to supervisory

liability maybe found:

1) There must have been a policy or procedures in effect at the time of the alleged injury

    that created an unreasonable risk of a constitutional violation;

2) The official had to have bene aware that the policy created an unreasonable risk;

3) The official was indifferent to that known risk; and,

4) The constitutional injury was caused by the failure to implement the supervisory

    practice or procedure. Sample; Chavarriaga (cited by Defendant).

      The record described below confirms these elements are met.

In addition to something akin to supervisory liability, the record also shows Defendant had personal involvement and actual knowledge of the wrongful conduct (keeping Plaintiff imprisoned two (2) months more than he was supposed to be imprisoned).  Id; Rizzo (cited by Defendant):

On April 29, 2016, the Pa. Board of Probation and Parole (PBPP) Director of Case Analysis, Marci Johnson sent an email to multiple people in the PBPP including Defendant about a new policy.  The subject line of the email was: "Federal and Out of State Cases."  Defendant was cc'd on the email, which stated:

> **Effective immediately**, please process all federal and out of state cases in the following manner.
>
> Give back time credit from the board warrant until the sentence date.  The sentence date will be the effective date of return for all cases.  If you feel there is an exception to these instructions, please bring cases to Rachel or me. (Exh. A).

Importantly, it is undisputed that this policy meant that Plaintiff should be released from prison.

Defendant confirmed that she received the email.

Defendant testified that she supervised the sender of the email. (Exh. B., Defendant, Barkley's Dep. at 14:3).

Defendant said she received the same directive from the legal department.  Id. at 14:15.

Defendant said she received a "formal letter" from legal about this new policy. Id.

Defendant confirmed there was a case (Banks) at that time that caused a change in the way she processed inmates.  Id. at 10:19.

Defendant further testified that Banks did not cause a backlog that would make it difficult to process Plaintiff.  Id. at 12:17.

On June 17, 2016, Defendant signed a form, which effectively released Plaintiff from prison.  (Exh. C).

That document was time-stamped and received by the prison, SCI-GREENE on June 23, 2016.  Id.  Plaintiff was then released.

In sum, Defendant received a directive to release Plaintiff **immediately** as of April 29, 2016.

It was Defendant's specific job responsibility to implement and communicate the law department's policy to her subordinates.

Defendant's direct subordinates handled the mechanics of releasing Plaintiff at Defendant's direction.

Defendant signed the form that released Plaintiff almost two (2) months later.

Defendant's claimed ignorance is belied by the record.

## 2.  False Imprisonment

Defendant misconstrues that Plaintiff's revocation hearing gave Defendant probable cause to imprison Plaintiff.  That is not why Defendant lacked probable cause.

As described above, Defendant received a directive to release Plaintiff immediately as of April 29, 2016.  Defendant had no probable cause to imprison Plaintiff after that date.

## 3.  Due Process

Plaintiff sent multiple letters to various parties including PBPP on April 27, 2016 indicating that he was being held in prison past when he was supposed to be held in prison. (Exh. D).

The PBPP issued a directive two days later that Plaintiff should be released from prison immediately.

Plaintiff was not released for another two (2) months.

Plaintiff was deprived of his liberty and any kind of formal or informal hearing during the two (2) additional months he was imprisoned.

This was a violation of both substantive and procedural due process.

### 4. Interpretation of State Law/Qualified Immunity

The critical question in a qualified immunity analysis is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201 16 (2001). This inquiry "must be undertaken in light of the specific context of the case." Id.

Here, PBPP's legal department issued a bright line internal policy to release Plaintiff around April 29, 2016,

Defendant testified that she was aware of the legal department's policy and understood the policy.

Defendant never doubted the propriety of the policy.

Defendant provided no justification for the two (2) month delay. In fact, she said there was no backlog that would make it difficult to process Plaintiff.

Defendant now argues that the Pennsylvania Supreme Court subsequently overturned the law regarding prisoners like Plaintiff. This is irrelevant to the qualified immunity analysis because it did not enter Ms. Barkley's thought process during the time period at issue. The Supreme Court decision happened long afterwards.

Defendant never needed to interpret state law. The only question is whether Defendant knowingly failed to follow her own legal department's policy. She did. In doing so, Defendant violated Plaintiff's constitutional rights: false imprisonment and due process (described above).

**5. Concessions**

Plaintiff respectfully withdraws his claims against Defendant in her official capacity.

Plaintiff respectfully withdraws his claims for false arrest and malicious prosecution.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Defendant's

Motion for Summary Judgment consistent with the attached proposed Order.

Plaintiff respectfully requests oral argument.

**WEISBERG LAW**

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
David A. Berlin, Esquire
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lashawn Spruell a/k/a | : | |
| Shawn Spruell | : | |
| | : | |
|       Plaintiff, | : | NO.:   2:17 -cv-00809 |
| | : | |
|     v. | : | |
| | : | |
| Kimberly Barkley | : | **JURY TRIAL DEMANDED** |
| | : | |
|       Defendant. | : | |

## CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 1st day of October 2018, a

true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendant's Motion

for Summary Judgment was served via ECF upon the following parties:

Timothy Mazzocca, Esquire
Office of Attorney General
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburg, PA 15219


**WEISBERG LAW**

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esq.
*Attorney for Plaintiff*