IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LASHAWN SPRUELL a/k/a<br>SHAWN SPRUELL<br><br>      Plaintiff,<br><br>v.<br><br>KIMBERLY BARKLEY, individually in her former capacity as Board Secretary for the Commonwealth of Pennsylvania Board of Probation and Parole,<br><br>      Defendant. | Civil Action No. 2: 17-cv-0809<br><br>Chief United States Magistrate Judge<br>Cynthia Reed Eddy |

**MEMORANDUM OPINION[1]**

Presently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 46). For the reasons set forth below, the motion for summary judgment will be granted.

Procedural Background

On June 26, 2017, Plaintiff, LaShawn Spruell a/k/a Shawn Spruell ("Plaintiff" or "Spruell"), a former state prisoner, initiated this lawsuit pursuant to 42 U.S.C. § 1983 by the filing of a counseled Complaint against thirteen named individual defendants, some of whom are employed by the Pennsylvania Department of Corrections and others of whom are employed by the Pennsylvania Board of Probation and Parole (the "Board"), and John Does 1-10. Plaintiff alleges he was wrongfully incarcerated past his maximum parole release date. On September 19, 2017, Defendants filed a Partial Motion to Dismiss on the grounds that ten of the named

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have this matter adjudicated by a United States Magistrate Judge. *See* ECF Nos. 6 and 15.

1

defendants lacked personal involvement as required by § 1983. (ECF No. 11). Plaintiff apparently agreed and on October 2, 2017, filed a Notice of Voluntary Dismissal Without Prejudice dismissing those ten defendants. (ECF No. 15). On May 18, 2018, with the approval of the Court, Plaintiff filed an Amended Complaint in which he dismissed the remaining three original defendants, and substituted Kimberly Barkley, Board Secretary, for the John Doe Defendants.[2] An additional thirty (30) day period for discovery was also allowed. The Amended Complaint remains Plaintiff's operative pleading. (ECF No. 37).

Discovery has closed and Defendant Barkley filed the instant motion for summary judgment (ECF No. 46), with a brief in support (ECF No. 47), a concise statement of undisputed material facts (ECF No. 38), and an appendix of record evidence (ECF No. 49). Defendant argues, *inter alia*, that she had no personal involvement with Plaintiff's case and, in the alternative, that she is entitled to summary judgment on all claims against her on the merits. In response Plaintiff, through counsel, filed a brief in opposition to the motion for summary judgment, with attached Exhibits (ECF No. 52). Defendant then filed a response to Plaintiff's counter concise statement of undisputed material facts (ECF No. 53) and a reply brief (ECF No. 54). Plaintiff, in turn, filed a response in opposition to Defendant's concise statement of material facts. (ECF No. 57). For the reasons set forth below, the Court agrees with Defendant and will grant her motion for summary judgment.

---

[2] John Doe Defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." *Johnson v. City of Erie*, 834 F. Supp. 873, 878 (W.D.Pa. 1993) (citations omitted) Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. *Sheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D.Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.") During the telephone status conference on June 21, 2018, Plaintiff advised that he would be filing a Notice of Voluntary Dismissal as to the John Doe defendants. (ECF No. 45). To date, such Notice has not been filed. Therefore, the Court will dismiss *sua sponte* the fictitious John Does 1-10.

The Facts

The facts in this lawsuit are straightforward. The summary judgment record reflects that on November 5, 1998, Spruell pled guilty to two counts of robbery and was sentenced to concurrent periods of incarceration of 4 to 12 years and 5 to 12 years with maximum dates of March 27, 2010, and September 2, 2010. Spruell was committed to serve his incarceration in the custody of the Pennsylvania Department of Corrections ("DOC"). The Board granted Spruell parole by decision of May 16, 2006. Spruell was released from prison on June 23, 2006.

On October 16, 2008, while still on parole, Spruell was arrested on new criminal charges by the Philadelphia Police Department and charged with various state crimes related to firearm possession and aggravated assault. On December 4, 2008, the Board made a decision to detain Spruell in the Philadelphia County Prison pending disposition of the new state criminal charges.

On April 24, 2009, a Criminal Complaint was filed in federal court against Spruell relating to his pending state criminal charges. Thereafter the state charges were *nolle prossed*. Following a guilty plea to a charge of felon in possession of a firearm, Spruell was sentenced in federal court on October 26, 2011, to a federal sentence of 84 months with credit for 36 months time served. There is nothing in the summary judgment record that indicates that Spruell was to be returned to state prison or to the Board to serve his state sentence before continuing to serve his federal sentence. On November 16, 2011, the Board recommended that Spruell's parole be revoked and that he be recommitted to the DOC as a convicted parole violator ("CPV").

On December 7, 2011, the Board issued a detainer for Spruell's arrest due to his federal conviction.

Spruell remained in federal custody until July 20, 2015, when he completed his federal sentence. On that date, the federal Bureau of Prisons released Spruell to the Board pursuant to

3

the Board's detainer. On July 27, 2015, the Board issued an Administration Act returning Spruell to state custody as a CPV and for the scheduling of a revocation hearing. Spruell arrived at SCI-Greene on August 2, 2015.

On October 28, 2015, Spruell, with counsel from the Greene County Public Defender's Office, attended a Revocation Hearing at SCI-Greene before Timothy Douglas, the hearing examiner, and Craig McKay, a Board member. Matthew Darr, Spruell's parole supervisor, was also in attendance. (ECF No. 49-1 at 82). In a Notice of Board Decision, recorded November 9, 2015, the Board recommitted Spruell to a state correctional institution as a CPV to serve 18 months back time for his federal conviction of felon in possession of a firearm. His new parole violation max date was determined to be March 9, 2019.

Spruell filed an administrative appeal of the Board Decision on December 17, 2015, alleging that the time he served for his federal sentence should also have counted towards his state sentence and, therefore, his maximum sentence date had passed. By Notice of Board Decision recorded April 13, 2016, Spruell was denied parole.

During the relevant time period, the Pennsylvania Commonwealth Court issued a line of cases involving sentence calculations. On April 23, 2016, the Board announced that a new policy was in effect for pre-sentence calculations in accordance with the Commonwealth Court decisions. On May 6, 2016, the Board began reviewing Spruell's sentence data sheet. Spruell's maximum date was recalculated to April 3, 2014.

On June 17, 2016, Spruell's parole supervisor was informed of the recalculation and instructed to process Spruell for release. A Notice of Board decision the same day formally changed Spruell's maximum release date to April 3, 2014. On June 23, 2016, Spruell was released from DOC custody.

Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendant acted under color of state law and that the plaintiff was

deprived of a right, privilege, or immunity secured by the Constitution or federal law. *See Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir. 1994).

Discussion

A.  *Pennsylvania Law*

"The general rule governing the allocation of credit for time served awaiting disposition of new criminal charges was established by [the Pennsylvania Supreme Court] in *Gaito v. Pennsylvania Board of Probation [&] Parole*, 488 Pa. 397, 412 A.2d 568 (1980)." *Armbruster v. Pa. Bd of Prob. & Parole*, 919 A.2d 348, 352 (Pa. Cmwlth. 2007). Pursuant to *Gaito*, Pennsylvania courts "consistently held that once a parolee is sentenced on a new criminal offense, the period of time between arrest and sentencing, when bail is not satisfied [on the new criminal charge], must be applied to the new sentence, and not to the original sentence." *Armbruster*, 919 A.2d at 352. In the years following the *Gaito* decision, courts began to apply two exceptions to the general rule of *Gaito*. In *Martin v. Pennsylvania Bd. of Prob. & Parole*, 840 A.2d 299 (Pa. 2003), the Pennsylvania Supreme Court recognized that a parolee should receive credit to the original sentence for periods of custody on a Board warrant <u>and</u> new criminal charges where the parolee is not convicted or does not receive a sentence of incarceration on the new conviction. *Id*. at 308-09. Similarly, the Commonwealth Court held that a parolee is entitled to credit against his original sentence even though he does not post bail on the new charges where the sentence on the new criminal charges is less than the time spent in custody on those charges. *Armbruster*, 919 A.2d at 354-56.

The analytical framework of *Gaito* was further altered in 2010 when the General Assembly amended Section 6138(a) of the Prisons and Parole Code to add Paragraph 5.1, which provides as follows:

> If the parolee is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), <u>the parolee shall serve the balance of the original term before serving the new term</u>.

61 Pa. C.S. § 6138(a)(5.1) (emphasis added).[3] And the analytical framework of *Gaito* was further altered four years later in 2014, when the Commonwealth Court issued its decision in *Baasit v. Pennsylvania Board of Probation and Parole*, 90 A.3d 74 (Pa. Cmwlth. 2014). In *Baasit*, the Commonwealth Court noted that Section 6138(a)(5.1) "constituted a significant change in legislative policy regarding the order of service of sentences where the convicted parole violator received a new sentence in a federal court or a court of another jurisdiction, *id*., at 82, and concluded that

> [b]cause the parolee must serve the entirety of his original term before serving his new federal or different jurisdiction [pursuant to Section 6138(a)(5.1) of the Parole Code] . . . the parolee no longer fell under [the] *Gaito* rule. As such, . . . any pre-sentence confinement credit earned by a parolee must be applied to the original sentence.

*Hammonds v. Pa. Bd. of Prob. & Parole*, 143 A.3d 994, 998 (Pa. Cmwlth. 2016).[4]

In 2016, following the holding of *Baasit,* the Commonwealth Court issued two decisions involving the application of Section 6138(a)(5.1). First, on February 23, 2016, the Commonwealth Court issued its decision in *Smith v. Pennsylvania Board of Probation & Parole,*

---

[3] Pennsylvania regulations, however, contemplate the possibility that the sentences cannot be served in the order provided for by § 6138(a)(5.1). 37 Pa. Code § 71.5 provides, in relevant part, "(a) If the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth. . . . (e) [T]he Board may defer the revocation hearing until either partial or full service of a new sentence which a parolee receives." Recently, the Pennsylvania Commonwealth Court expressly recognized that the Board has no power to "pluck" a Pennsylvania parolee away from a federal prison to recommit him to state custody as a parole violator. *Santosusso v. Pa. Bd. of Probation & Parole*, 2018 WL 61529 at *3 (Pa. Cmwlth. 2018) (unreported).

[4] At the time the Board recommitted Spruell on October 28 2015, *Baasit* was the controlling law.

133 A.3d 820 (Pa. Cmwlth. 2016) ("*Smith I*"), *rev'd* 171 A.3d 759 (Pa. 2017) ("*Smith II*"), wherein it held that the General Assembly's addition of Section 6138(a)(5.1) requires that "any presentence confinement earned by [a convicted parole violator who receives a new out-of-jurisdiction sentence] must be applied to his original sentence." *Smith I*, 133 A.3d at 825.

Two months later, on April 27, 2016, the Commonwealth Court issued its decision in *Banks v. Pennsylvania Board of Probation & Parole*, 136 A.3d 1102 (Pa. Cmwlth. 2016), *judgment vacated*, 176 A.3d 228 (Nov. 29, 2017), in which the Commonwealth Court remanded the case so that the Board could give the CPV credit for the period from the date of the federal detainer until the date the federal sentence was imposed in accordance with the Commonwealth Court's interpretation of Section 6138(a)(5.1) as advanced in *Baasit* and *Smith I*.

However, the pre-sentence calculation landscape changed again on October 18, 2017, when on appeal of *Smith I,* the Pennsylvania Supreme Court expressly rejected the *Baasit* court's interpretation that Section 6138(a)(5.1) governs how pre-sentence credit should be allocated. The Pennsylvania Supreme Court declared that, notwithstanding the enactment of Section 6138(a)(5.1), "*Gaito* remains the general law in this Commonwealth respecting how credit should be allocated for a [CPV] who receives a new sentence of incarceration, and the exception to *Gaito*, set forth at footnote 6 and further developed in *Martin*, is limited to cases in which a [CPV] receives a term of incarceration for new charges that is shorter than his pre-sentence confinement[.]" *Smith II,* 171, A.3d. at 771 (emphasis added). Therefore, *Smith II* re-established the principal that the Board does not have flexibility to determine the sentence to which credit should be applied.

Pursuant to *Gaito* and *Smith II,* the time Spruell was held on the Board's detainer, was correctly credited only to his federal sentence. However, before *Smith II* was decided and while

8

*Baasit* still controlled, the Board began to reexamine its policy regarding pre-sentence calculations. It reexamined Spruell's max date in accordance with the *Baasit/Smith/Banks* line of cases and recalculated Spruell's max date to April 3, 2014. (ECF No. 49-2 at 2). The Board's decision was mailed on June 21, 2016, and Spruell was released two days later on June 23, 2016.

B.  *Application to Plaintiff*

Before turning to the merits of the parties' arguments, the Court notes that Plaintiff has withdrawn his claims against Defendant Barkley in her official capacity and has withdrawn his claims for false arrest and malicious prosecution. (P's Br. at 8). Accordingly, Plaintiff is proceeding on two claims: wrongful imprisonment and due process. P's Br. at 7-8. Additionally, it appears that Plaintiff has limited his claim to the two month period from April 29, 2016, the date of the Board's change in policy, to June 23, 2016, the date of his release. Specifically, Spruell argues that "Defendant received a directive to release Plaintiff immediately as of April 29, 2016," Pl's Br. at 6, and "cannot escape the fact that she (through her subordinates) did not release Plaintiff until about two (2) months after the Board's policy changed and Plaintiff's max date was recalculated." P's Resp. in Opp'n to D's Stmt of Mat. Facts, ¶ 34 (ECF No. 57).

1. Lack of Personal Involvement

To show that Barkley violated Spruell's rights, he must first demonstrate that she had personal involvement and knowledge of the violations alleged. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Defendant advances several arguments in support of her motion for summary judgment, including the argument that as Board Secretary she did not have personal involvement in the calculation of Spruell's release date or that she had any supervisory role over the Office of Chief Counsel, which made the relevant parole decisions.

9

The requirements for personal supervisory liability were clarified by the United States Court of Appeals for the Third Circuit in *Barkes v. First Correctional Medical, Inc*., 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, -- U.S. --, 135 S.Ct. 2042, 2043 (2015). There our appellate court outlined "two general ways" in which a supervisor-defendant may be liable: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The Court of Appeals explained these two general types of supervisory liability as follows:

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr*., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist*., 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp*., 50 F.3d 1186, 1190–91 (3d Cir. 1995) ). "Failure to" claims—failure to train, failure to discipline, or, as in the case here, failure to supervise—are generally considered a subcategory of policy or practice liability.

*Id*.

The summary judgment record reflects that while Barkley's name was on all Board Decisions, it was the hearing examiners and board members who actually made the parole decisions. Her office processed those decisions. *See* Barkley Depo, at 11 (ECF No. 49-1 at 133). *See also Shoffner v. Wenerowicz*, 2016 WL 1660559 (E.D.Pa. April 27, 2016) (granting summary judgment as Barkley did not personally check each Board decision and did not calculate any parolee's sentence); *Butler v. Pa. Bd. of Prob. and Parole*, 2014 WL 1929537, at *5 (E.D.Pa. May 13, 2014) (dismissing plaintiff's complaint against Barkley because his §1983 claim based solely on her electronic signature was insufficient to raise an inference that she was

personally involved); *Thomas v. Barkley*, No. 13-551, 2013 WL 4786124, at *6 (W.D. Pa. Sept. 6, 2013) (dismissing complaint against Barkley because her signature on a Board decision does not "raise[] a plausible inference that Barkley was responsible for calculating [plaintiff's] release date, or that she participated personally in any violation of [plaintiff's] rights.").

The sentence calculations of a CPV are determined by parole technicians in the Board's central office. Depo. of Matthew Darr, at 12 (ECF No. 49-2). Barkley testified in her deposition that she and her staff were given legal advice on how to process cases under the new policy by the Office of Chief Counsel. Depo. of Kimberly Barkley at 15 (ECF No. 49-2).

The summary judgment record does not support Spruell's contention that Barkley had any personal involvement or actual knowledge of Spruell's alleged harm ("keeping Plaintiff imprisoned two (2) months more than he was supposed to be imprisoned"). P's Br. at 5. The summary judgment evidence of record is completely void of any evidence which points to specific acts or omissions of Barkley that evidence deliberate indifference.

For these reasons, the Court finds that the undisputed factual record reflects that Barkley did not have personal involvement in Spruell's alleged harm. The Court concludes, therefore, that no reasonable jury could conclude that Barkley had knowledge of or personal involvement in Spruell's alleged harm and summary judgment will be granted in Barkley's favor.

    2.    <u>In the Alternative, Defendant Argues that She is Entitled to Summary Judgment on the Merits of Plaintiff's Constitutional Claims</u>

Spruell argues that his rights under the "Fourth, Eight (sic) and Fourteenth Amendments to the United States Constitution" were violated by holding him in custody for the two months between the time the Board changed its policy and the time he was released. Assuming,

*arguendo* that Barkley had sufficient personal knowledge, the Court agrees with Defendant and concludes that Barkley is entitled to summary judgment on all claims against her on the merits.[5]

        i.       *Wrongful Imprisonment*

Plaintiff argues that he was wrongfully incarcerated past his maximum parole sentence date. Defendant argues that "Plaintiff was recommitted as a convicted parole violator following a revocation hearing. The recommitment was based upon Plaintiff's guilty plea to federal criminal charges. There is no question that there was probable cause. Summary judgment should be entered on this claim . . . ." Def's Br. at 15. Plaintiff's cursory response in opposition is as follows:

> Defendant misconstrues that Plaintiff's revocation hearing gave Defendant probable cause to imprison Plaintiff. That is not why Defendant lacked probable cause.
>
> As described above, Defendant received a directive to release Plaintiff immediately as of April 29, 2016. Defendant had no probable cause to imprison Plaintiff after that date.

P's Br. at 6. Upon review of the record, the Court finds Plaintiff's argument to be unsupported by the summary judgment record. The April 29, 2016, email explaining the policy change was not a "directive" that Plaintiff be released immediately. ECF No. 49-2 at 147, Exh. 38). In fact, nothing in the email is directed towards Plaintiff specifically, and nothing in the record states that any of the prisoners impacted would be released immediately. Rather, the email advises the parole technicians of the change in policy, effective immediately. Importantly, the summary judgment record reflects that within a week of the new policy announcement, the Board began to re-evaluate Spruell's pre-sentence calculation. *See* ECF No. 49-1 at 129 (Ex. 24) (May 6, 2016,

---

[5] The Court finds that there is no need to address Defendant's alternative argument that she is entitled to absolute and/or qualified immunity as the Court has found that Defendant did not violate Plaintiff's constitutional rights.

12

email from Debra Anthony, a parole technician, to BOP asking for sentence data sheet for LaShawn Spruell). On June 20, 2016, a clarifying memo regarding the policy changes was sent to the parole technicians. ECF No. 49-2 at 150. Spruell was released three days after the clarifying memo was issued.

Imprisonment beyond a prisoner's proscribed term of incarceration constitutes "punishment within the meaning of the eighth amendment." *Sample v. Diecks*, 885 F.2d 1099, 1107-08 (3d Cir. 1989). If a prisoner can show the defendant "acted with deliberate indifference," then any punishment past the prisoner's term is cruel and unusual. *Granberry v. Chairman of Pa. Bd. of Prob. and Parole*, 396 F. App'x 877, 880 (3d Cir. 2010).

Based upon the undisputed summary judgment record, it is clear that Plaintiff cannot meet the burden to prove his false imprisonment claim as the Board released him within a reasonable amount of time after his sentence had been restructured based on the directives from the Office of Chief Counsel. Plaintiff offers no evidence on the summary judgment record to prove that Defendant was deliberately indifferent to his complaints of wrongful imprisonment. Thus, Defendant is entitled to summary judgment on this claim.

      ii.    *Due Process*

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To the extent Spruell is attempting to assert a substantive due process claim, he must prove that he was deprived of a protected property or liberty interest by arbitrary or capricious government action. *See Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). Similarly, "[a] procedural due process analysis involves a two-step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all

constitutional requirements." *Bowen v. Ryan*, 2006 WL 3437287 (M.D.Pa. Nov. 29, 2006), *aff'd*, 248 F. App'x 302 (3d Cir. 2007); *see also Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Plaintiff alleges that his detention for the additional two months after the policy change "was a violation of both substantive and procedural due process." Pl's Br. at 7. For the following reasons, the Court finds this argument to be without merit.

Even assuming *arguendo* that Spruell was deprived of a constitutionally protected liberty interest, the summary judgment record clearly reflects that Spruell received the process he was due. At the time he filed his administrative appeal to the Office of Chief Counsel, the new Board policy based on the *Baasit/Smith/Banks* line of cases had not yet been adopted. But once the policy was adopted, the Board began reviewing Spruell's file, which resulted in his maximum date being changed from 2019 to 2014. By Notice of Board Decision recorded June 17, 2016, and mailed June 21, 2016, Spruell was advised that his parole violation max date had been changed to 4/03/2014. (ECF No. 49-2 at 2). He was released from custody on June 23, 2016.

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. Nonetheless, the Court has clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The test of whether an action shocks the conscience is fact specific and decided on a case-by-case basis. *See United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392, 399–400 (3d Cir. 2003).

The undisputed summary judgment record reflects that after meeting with "legal," on April 29, 2018, the Board Director of Case Analysis, Marci Johnson, issued an email to her staff with directions on how to process the Board's new policy. (ECF No. 49-2 at 147, Exh. 38). Thereafter, in response to the "multiple questions on when and how to apply the *Baasit-Smith-Banks* line of cases," on June 20, 2016, Ms. Johnson prepared a detailed clarifying memorandum which was distributed to her staff specifically stating that "[t]he only cases that should be in question are cases with a CPV when available board action in place and with a sentence date of 10/27/2010 or later" and relayed the Office of Chief Counsel's legal advice as follows, in relevant part:

> A.  <u>Federal / Out-of-State Cases Where There is a CPV Recommitment Decision and the Federal/ Out-of-State Sentence is served before the Original Sentence (this includes cases where the CPV is in "when available" status awaiting return to the SCI):</u>
>
> 1. Was the CPV sentenced to serve a federal or out-of-sentence on or after October 27, 2010? If yes, go to number 2. If no, than this advice does not apply.
>
> 2. Did the CPV serve his Federal Sentence before his Original Sentence? If yes, go to number 3. If not, than this advice does not apply.
>
> 3. The offender is entitled to sentence credit for the period of time the Board lodged its detainer to the date of sentencing, with the custody for return date being the date of sentence. The normal "double credit" and "concurrent service of sentences" prohibitions do not apply to this situation.

(ECF No. 49-2).

Defendant Barkley testified in her deposition that the "process" involved in releasing inmates could take "days to weeks." Barkley Depo. at 17 (ECF No. 49-2 at 139). She further explained,

> So the board secretary office, they process the case. And once the decision is made, it goes to the institution parole office and the staff at the parole office at the SCI, then they coordinate the release. . . .

15

> There's a lot that goes into it, there's a lot of legislative mandate that goes into it. So they have to submit to urinalysis, you have to wait for that to come back from the lab, you have to make sure any - it depends on the nature of the crime, was DNA pulled, do they have to be registered, do they have a home plan. We can't
>
> leave somebody out without a home plan to go to. So there's a lot of factors that go into the release process. So that just doesn't happen within a day or so either.

Id. at 19 (ECF No. 49-2 at 140). Defendant Barkley further testified that the entire release process could take up to six weeks,

> Depending on if he has a home plan. If the field had to go out and investigate his home plan, then yes. They get ten days to go out, investigate, and do the home plan. Sometimes it takes longer if the home provider doesn't answer the phone or they're not home.

*Id.* at 19 (ECF No. 49-2 at 141).

On June 17, 2016, Matthew Darr, Spruell's parole supervisor, was notified by Rachel MacNamara, Parole Manager I with the Case Analysis Division of the Board that,

> Due to a recent change in the way we allocate credit on Federal sentences, we are recalculating [Spruell's] CPV recommit from 2015. He is going to be granted additional credit, which will change his max to sometime in February 2014. Please begin processing him for release, but do not release him until you receive the BA and PBPP39. I will notify you when it is available. Thank you.

(ECF No. 49-1 at 136). Spruell was released from custody six days later. That there was a two month delay in Spruell's release simply does not shock this Court's conscience.[6]

---

[6] That this is the case should not be surprising. From the summary judgment record, it appears that when Spruell was originally released on parole in 2006, it was approximately six weeks from the time the Board granted him parole by decision of May 16, 2006 (ECF No. 49-1 at 7, Exh. 3) to the time he was released from prison on June 26, 2006. (ECF No. 49-1 at 11, Exh. 4).

C.   *State Law Claims*

In Paragraph 68 of the Amended Complaint, Plaintiff states that his due process claims are brought under the U.S. Constitution pursuant to 42 U.S.C. § 1983, "as well as common law." (ECF No. 37 at 11).

A district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. However, the Court of Appeals for the Third Circuit has recognized, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in original). Here, all of Plaintiff's federal claims - that is, all claims over which the district court had original jurisdiction will have been dismissed. Considerations of judicial economy, convenience, and fairness do not provide an affirmative justification for maintaining Spruell's state law claims. *Shaffer v. Bd. of Sch. Dir. of Albert Gallatin Area S.D.*, 730 F.2d 910, 912-13 (3d Cir. 1984) (noting that "time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction" and that "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"). As such, the Court will dismiss the state law claims without prejudice for want of jurisdiction. *See Burnsworth v. PC Lab.,* 364 F. App'x 772, 776 (3d Cir. 2010) (affirming a district court's decision to decline supplemental jurisdiction over state law claims when the federal claims had been dismissed); *Alexander v. New Jersey State Parole Bd.*, 160 F.

App'x 249, 251 (3d Cir. 2005) (same).

## Conclusion

For all these reasons, Defendant's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendant and against Plaintiff. An appropriate order follows.

Dated: March 14, 2019

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc: All Counsel of Record
(via ECF electronic notification)